**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | |
|---|---|
| HANNAH LEWIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br>Plaintiff, | 4:23-cv-00177 |
| - against - | Class Action Complaint |
| SONY ELECTRONICS INC.,<br>Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Sony Electronics Inc. ("Defendant") manufactures the a7iii camera ("Product") described as "the vanguard of the mirrorless camera movement because they're the most accessible full-frame system[s] on the market."



2. Before digital sensors, cameras used film to capture images.

3. An inside mirror reflected an image into an optical viewfinder, showing the area that will be included in the picture.[1]

4. Once the shutter opens, light passes through the lens.

5. The mirror moves out of the path of the light hitting the film when the shutter button is released, creating the image.

6. The shutter is the component that retracts for a specific period of time,

[1] Britannica, The Editors of Encyclopedia. "Viewfinder". Encyclopedia Britannica, 19 Sep. 2019.

allowing light to pass through the lens, hitting a photographic film or a light-sensitive sensor to expose a scene and permanently register it.

7. When the scene is registered, that shutter goes back down.

8. Camera shutters are measured by actuations, which is the number of pictures taken with the camera.

9. This is a relevant metric because for each picture, the shutter flaps open and closed for an "exposure" or actuation.

10. A mirrorless camera is identical to previous types of cameras but without a mirror.[2]

11. The absence of a mirror increases its speed and allows it to be smaller and lighter than a traditional digital camera ("DSLR" or digital single-lens reflex camera).

12. Mirrorless cameras are preferred by many professional photographers

[2] Mirrorless Interchangeable-lens Camera or "MILC"; Canon New Zealand, Mirrorless or DSLR Cameras: Which is Right for You?.

because they are quieter, which provides less distractions when photographing events like weddings, lighter and more durable than DSLR cameras which contributes to their higher cost.[3]

13. The shutter life expectancy on the a7iii is 200,000 actuations.

14. However, numerous users report shutter failures far below 200,000 but between 10,000 and 50,000.[4]

15. While the a7iii is generally sold with a one-year warranty, shutter failure can occur randomly, often outside of the warranty period.

16. The result is that purchasers must pay over five hundred dollars for repair and replacement of the shutter mechanism.

17. The shutter failure manifests in a consistent way.

18. Prior to shutter failure, users report hearing an atypical shutter sound, followed by the screen turning black and displaying the following message: "Camera Error. Turn power off then on."

---

[3] Vincent Tabora, DSLR vs. Mirrorless, Medium.com, Oct 14, 2019.
[4] We want Sony A7III to be recalled for Shutter replacement, Change.org petition, 2019.



19. However, following these instructions will not solve the problem.

20. Users who experience shutter failure have tried removing and reinserting the battery, which is ineffective.

21. When a user removes the lens, the shutter is closed and stuck.

 

22. In most instances, the shutter has become detached.

 

23. Several explanations have been advanced for why the a7iii shutters fail prematurely.

24. First, the shutter blade catches on the front edge as it moves down in taking a picture.

25. This is because the blades are positioned farther forward, so they "catch" and fail to fully clear.

26. Moreover, the front curtain shutter material is of limited strength, causing it to break.

27. Second, the shutter is unusually susceptible to disruption by small particles, even dust, which can cause the blades to become out of alignment.

28. Many users have resorted to using the camera with the electronic front curtain shutter ("EFCS") off, which may decrease the chance of a shutter malfunction.

29. When the EFCS is on, it "shortens the time lag between shutter releases

and helps reduce shutter noise when taking pictures."[5]

30. However, the EFCS is one of the main reasons for purchasing the a7iii and having to refrain from using it diminishes the camera's utility and value.

31. For users whose shutters do not fail completely, they nonetheless experience abnormal banding that is evident only when using the mechanical shutter.

32. The cause is the failure of the rear curtain to clear properly.

33. Though users and do-it-yourself repair enthusiasts have offered ways to unbind the shutter, these can cause further damage.

34. Additionally, the problem would be likely to reoccur, and the user will have any warranty claim denied for having caused "physical damage" in attempting to fix the shutter failure.

35. Defendant has denied warranty coverage to numerous a7iii users on these grounds.

36. Defendant has denied coverage to those who experienced shutter failure when their claims were submitted outside of the limited warranty period.

37. Defendant has been aware of the shutter failure on the a7iii since shortly after its release around 2017.

38. Defendant is aware of the percentage of this model which experience premature shutter failure but has declined to act by issuing a recall or covering the

[5] What Is the Electronic Front Curtain Shutter Function?, Sony.com, March 23, 2021.

faulty shutters.

Jurisdiction and Venue

39. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

40. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

41. Plaintiff is a citizen of Florida.

42. Defendant is a citizen of Delaware and California.

43. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

44. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold to thousands of purchasers from brick-and-mortar stores and online across the States covered by Plaintiff's proposed classes.

45. Venue is in this District with assignment to the Tallahassee Division because Plaintiff resides in Leon County and a substantial part of the events or omissions giving rise to these claims occurred in Leon County, including Plaintiff's purchase of the Product, reliance on the identified statements, and subsequent awareness they were false and misleading.

Parties

46. Plaintiff Hannah Lewis is a citizen of Tallahassee, Leon County, Florida.

47. Defendant Sony Electronics Inc. is a Delaware corporation with a principal place of business in San Diego, California.

48. Defendant is one of the world's leading camera manufacturers.

49. As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately $2,000.00, excluding tax and sales, higher than similar products, represented and warranted in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

50. Plaintiff purchased the Product within the statutes of limitations for each cause of action alleged, at Best Buy in Tallahassee in 2021.

51. Plaintiff bought the Product because she expected it would adequately function and would not malfunction after a short period of usage, approximately one year after she bought it.

52. Plaintiff expected it would be covered under the warranty.

53. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and

separately, through in-store, digital, audio, and print marketing.

54. Plaintiff bought the Product at or exceeding the above-referenced price.

55. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

56. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes such as the expectation that its shutter would function reliably.

57. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

58. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products because she is unsure of whether their representations are truthful.

59. If Defendant was compelled to truthfully disclose the functionality and issues with its Product, Plaintiff would have more confidence in purchasing other similar products, because she would be able to rely on their adequacy for sale and use.

Class Allegations

60. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, New Mexico, Idaho, Montana, Wyoming, Iowa, Utah, Alaska, Mississippi, Arkansas and Kansas who purchased the Product during the statutes of limitations for each cause of action alleged.

61. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

62. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

63. Plaintiff is an adequate representative because her interests do not conflict with other members.

64. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

65. Individual actions would risk inconsistent results, be repetitive and are

impractical to justify, as the claims are modest relative to the scope of the harm.

66. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

67. Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act
("FDUTPA"), Fla. Stat. § 501.201, *et seq.*
(Florida Class)

68. Plaintiff incorporates by reference all preceding paragraphs.

69. Plaintiff relied on the representations and omissions to believe the Product would remain functional given her intended usage throughout its normal life span.

70. Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

71. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

72. The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked

by Plaintiff.

Breach of Contract

73. Plaintiff and Defendant entered into a contract for the sale of the Product.

74. The terms included a camera with a shutter that would not break within a short period of time and that if it did, Defendant would repair it at no cost.

75. Plaintiff paid money for the Product, which Defendant received.

76. Defendant breached the contract because the Product failed to function due to its shutter failure and was unwilling to repair it at no cost.

77. Plaintiff was harmed by paying more for the Product in light of its premature failures and inability to use the camera in the manner intended.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

78. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it would adequately function and that its shutter would not prematurely fail.

79. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

80. Defendant knew the product attributes that potential customers like

Plaintiff were seeking, such as a camera that would adequately function with a shutter that would not prematurely fail, and developed its marketing and labeling to directly meet those needs and desires.

81. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would adequately function with a shutter that would not prematurely fail.

82. Defendant described the Product so Plaintiff believed it would adequately function with a shutter that would not prematurely fail, which became part of the basis of the bargain that it would conform to its affirmations and promises.

83. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

84. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Sony brand of cameras.

85. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

86. Plaintiff provided, provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

87. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers,

to its main offices, and by consumers through online forums.

88. The Product did not conform to its affirmations of fact and promises.

89. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would adequately function with a shutter that would not prematurely fail.

90. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it would adequately function with a shutter that would not prematurely fail, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

91. Defendant had a duty to truthfully represent the Product, which it breached.

92. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality cameras.

93. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and

commitments to quality that Defendant has been known for.

94. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

95. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

96. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

Fraud

97. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would adequately function with a shutter that would not prematurely fail.

Unjust Enrichment

98. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and

the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
5. Other and further relief as the Court deems just and proper.

Dated: May 6, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com